1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  MARGARET EVE-LYNNE MIYASAKI,          No   C 05-5331  VRW

12              Plaintiff,                 ORDER

13

14              v

15  REAL MEX RESTAURANTS, INC, dba
    ACAPULCO SANTA CLARA, and DOES 1
16  through 10,

17              Defendants.
    _____/
18

19

20          Margaret Eve-Lynne Miyasaki brings this federal civil

21  rights action against Real Mex Restaurants alleging employment

22  discrimination on the basis of her sex and race in violation of

23  Title VII of the Civil Rights Act of 1964, 42 USC 2000e-5.  Doc #1

24  (Compl).  Before the court is Real Mex's petition to compel

25  arbitration.  Doc #11.  For reasons discussed below, Real Mex's

26  petition is GRANTED.

27  //

28  //

United States District Court

For the Northern District of California

**I**

Miyasaki began working as a karaoke disc jockey (or "DJ") for Real Mex's Acapulco Restaurant in Santa Clara in June 2002. Doc #14 (Specht Decl) ¶3.  At that time, she was told to sign Real Mex's dispute resolution agreement (DRA) as a condition of her employment with no option of declining its terms and conditions. Doc #24 (Miyasaki Decl) ¶3.  See also Specht Decl, Ex C (DRA). Miyasaki signed the DRA along with a form acknowledging her receipt of the Real Mex employee handbook, which also contains a dispute resolution policy.  Specht Decl ¶¶4-5.  See also id, Ex B (Employee Handbook).

The DRA describes its general scope as follows:

> [Y]ou and the Company mutually agree to resolve by mediation and binding arbitration any claim that, in the absence of [the DRA], would be resolved in a court of law under applicable state or federal law. The claims governed by this agreement are those that you or [Real Mex] may have relating to your employment with, behavior during or termination from, [Real Mex].  Claims for workers compensation or unemployment compensation benefits are not subject to this agreement.

The DRA later provides a non-exclusive list of specific types of claims to which it applies:

> This includes, but is not limited to, claims of employment discrimination * * *.  It also includes any claim you might have for unlawful harassment including sexual harassment and unlawful retaliation; any claims under contract or tort law; any claim for wages, compensation or benefits; and any claim for trade secret violations, unlawful competition or breach of fiduciary duty.

The DRA further specifies that arbitrations are governed by the National Rules for the Resolution of Employment Disputes of the American Arbitration Association (AAA) (the "AAA employment dispute rules").

United States District Court

For the Northern District of California

1  Miyasaki does not contest that her present claim falls

2  within the scope of the DRA.  Miyasaki, however, opposes Real Mex's

3  petition on the ground that the DRA is unenforceable.

4

5                                    II

6  Congress enacted the Federal Arbitration Act (FAA) to

7  "reverse the longstanding judicial hostility to arbitration

8  agreements," to "place [such] agreements on the same footing as

9  other contracts" and to "manifest a liberal federal policy favoring

10  arbitration agreements."  EEOC v Waffle House, Inc, 534 US 279,

11  288-89 (2002).  The FAA applies to arbitration agreements in

12  employment contracts except those of transportation workers,

13  Circuit City Stores, Inc v Adams, 532 US 105, 119 (2001), and

14  likewise applies to claims under Title VII, Mago v Shearson Lehman

15  Hutton Inc, 956 F2d 932, 935 (9th Cir 1992).  See also generally

16  EEOC v Luce, Forward, Hamilton & Scripps, 345 F3d 742 (9th Cir

17  2003) (en banc) (overruling Duffield v Robertson Stephens & Co, 144

18  F3d 1182 (9th Cir 1998)).

19  The FAA mandates that courts treat arbitration agreements

20  as "valid, irrevocable, and enforceable, save upon such grounds as

21  exist at law or in equity for the revocation of any contract."  9

22  USC § 2.  In determining the validity of such an agreement, federal

23  courts "should apply ordinary state-law principles that govern the

24  formation of contracts."  First Options of Chicago, Inc v Kaplan,

25  514 US 938, 944 (1995).  Consequently, "generally applicable

26  defenses, such as * * * unconscionability" can serve to "invalidate

27  arbitration agreements without contravening § 2 of the FAA."

28  Doctor's Assocs, Inc v Casarotto, 517 US 681, 687 (1996).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Against this legal backdrop that favors the enforcement
2    of arbitration agreements, Miyasaki advances two arguments why the
3    DRA should not be enforced.

4

5                                III

6        Miyasaki contends that the DRA is unconscionable and
7    therefore unenforceable.  Under California law, an arbitration
8    agreement is invalid as unconscionable only if it is both
9    procedurally and substantively unconscionable.  _Armendariz v_
10   _Foundation Health Psychcare Servs, Inc_, 24 Cal 4th 83, 114 (2000).
11   There appears to be no dispute that the DRA is a contract of
12   adhesion and, as such, procedurally unconscionable.  See id at 114-
13   15.  The court will therefore focus on the substantive component.

14

15                                A
16                           _Armendariz_
17       Miyasaki argues that the DRA is substantively
18   unconscionable for lack of mutuality.  The leading California case
19   addressing mutuality in employment arbitration agreements is
20   _Armendariz_, _supra_.  _Armendariz_ involved an arbitration agreement
21   that applied only to claims arising from the termination of
22   employment.  After arriving at certain minimum requirements for the
23   arbitration of claims brought under the California Fair Employment
24   and Housing Act (FEHA), Cal Gov't Code § 12900 et seq, the
25   California Supreme Court turned its attention to whether the
26   agreement was unconscionably one-sided.  Relying primarily upon two
27   decisions by California courts of appeal, _Stirlen v Supercuts, Inc_,
28   51 Cal App 4th 1599 (1997); _Kinney v United HealthCare Servs, Inc_,

                                4

United States District Court

For the Northern District of California

70 Cal App 4th 1322 (1999), the court held the arbitration

agreement unconscionable because it lacked the requisite "modicum

of bilaterality." Armendariz, 24 Cal 4th at 117-18.  Specifically,

the court concluded that

> an arbitration agreement imposed in an adhesive
> context lacks basic fairness and mutuality if it
> requires one contracting party, but not the other,
> to arbitrate all claims arising out of the same
> transaction or occurrence * * *.  The arbitration
> agreement in this case lacks mutuality in this sense
> because it requires the arbitration of employee ——
> but not employer —— claims arising out of a wrongful
> termination.  An employee terminated for stealing
> trade secrets, for example, must arbitrate his or
> her wrongful termination claim under the agreement
> while the employer has no corresponding obligation
> to arbitrate its trade secrets claim against the
> employee.

Id at 120.

The court "emphasize[d]," however, that

> if an employer does have reasonable justification
> for the [unilateral] arrangement —— i e, a
> justification grounded in something other than the
> employer's desire to maximize its advantage based on
> the perceived superiority of the judicial forum ——
> such an agreement would not be unconscionable.
> Without such justification, we must assume that it
> is.

Id.

In relying upon Stirlen and Kinney, the Armendariz court

effectively recognized two situations in which arbitration

agreements between employers and employees might lack the requisite

degree of bilaterality to justify their enforcement.  First, as in

Kinney, arbitration agreements may be explicitly non-mutual when

the employer is expressly excepted from arbitrating any claims it

might have against the employee.  See Kinney, 70 Cal App 4th at

1326.  Second, as in Stirlen, an arbitration agreement may be

implicitly non-mutual even if it purports to apply to both parties,

5

as when the agreement "specifically exclude[s] certain types of disputes from the scope of arbitration" ── i e, types of disputes that would be brought by employers.  <u>Armendariz</u>, 24 Cal 4th at 116 (citing <u>Stirlen</u>, 51 Cal App 4th at 1528).  In <u>Stirlen</u>, for example, an arbitration agreement was held unconscionable because it specifically excluded the only claims likely to be brought by the employer against the employee (claims that an employee violated a non-competition agreement or divulged confidential information).  <u>Stirlen</u>, 52 Cal App 4th at 1541.

In effect, then, <u>Armendariz</u> attaches a rebuttable presumption of unconscionability to arbitration agreements <u>that are either explicitly or implicitly non-mutual</u>.

The DRA in this case does not fit within either aforementioned category:  It is bilateral on its face and it specifically applies to any trade secret claim Real Mex might have ── a feature that the <u>Armendariz</u> court seems to have contemplated as evidence of the requisite "modicum of bilaterality."  <u>Armendariz</u>, 24 Cal 4th at 120.

B

<u>Ingle</u>

Miyasaki does not seriously dispute that the DRA is claim-mutual on its face.  See Doc #23 (Opp) at 8.  Notwithstanding that the DRA ostensibly applies to claims brought by Real Mex as well as claims brought by employees, Miyasaki contends that Real Mex must demonstrate that the DRA is in fact bilateral and has failed to do so.  Miyasaki relies primarily upon the Ninth Circuit's decision in <u>Ingle v Circuit City Stores, Inc</u>, 328 F3d

United States District Court
For the Northern District of California

1165 (9th Cir 2003).

By its terms, the arbitration agreement in <u>Ingle</u> applied to "any and all employment-related legal disputes, controversies or claims of an Associate, arising out of, or relating to, an Associate's application or candidacy for employment, employment or cessation of employment."  <u>Ingle</u>, 328 F3d at 1173 n 5.  In other words, the agreement applied only to claims (1) brought by employees that were (2) related to hiring, firing and the like. Thus, the agreement in <u>Ingle</u> was both explicitly and implicitly non-mutual.

The court wasted little time concluding that the agreement was non-mutual on its face and that Circuit City had failed to offer any business justification within the meaning of <u>Armendariz</u>.  Id at 1173.  That conclusion would have been sufficient to support the panel's holding that the agreement was unconscionable.  But the panel, per Judge Pregerson, went on to discuss the agreement's implicit shortcomings:  "By essentially covering only claims that employees would likely bring against Circuit City, this arbitration agreement's coverage would be substantively one-sided without the express limitation to claims brought by employees."  Id at 1174.  See also id at 1174 n 8.

The panel held that

under California law, a contract to arbitrate between an employer and an employee, such as the one we evaluate in this case, raises a rebuttable presumption of substantive unconscionability. Unless the employer can demonstrate that the effect of a contract to arbitrate is bilateral —— as is required under California law —— with respect to a particular employee, courts should presume such contracts substantively unconscionable.

United States District Court

For the Northern District of California

Id at 1174.

The broad brush with which the panel painted leaves little room for doubt that <u>neither</u> explicit <u>nor</u> implicit non-mutuality is necessary to trigger the presumption prescribed by <u>Ingle</u>.  See id ("The only claims realistically affected by an arbitration agreement between an employer and an employee are those claims employees bring against their employers."); id at 1175 ("Even if the limitation to claims brought by employees were not explicit, an arbitration agreement between an employer and an employee ostensibly binds to arbitration only employee-initiated actions.").  See also Michael J McGuiness & Adam J Karr, <u>California's "Unique" Approach to Arbitration</u>, 2005 J Disp Resol 61, 80 ("[I]n the Ninth Circuit's view, it does not matter whether the text of the agreement commits employers as well as employees to arbitration.  The mere fact that the agreement is between an employer and employee is enough to make it so one-sided as to 'shock the conscience * * *.'").  On the other hand, because <u>Ingle</u> stated that the presumption it described applied to arbitration agreements between employers and employees "such as the one we evaluate in this case," the court could interpret <u>Ingle</u>'s presumption to apply only when an arbitration agreement is either explicitly unilateral or implicitly unilateral (or both).

Apparently, Miyasaki believes the broader reading of <u>Ingle</u> is the correct one, for she invokes the <u>Ingle</u> presumption notwithstanding that the DRA ostensibly applies to <u>all</u> claims arising between herself and Real Mex that could be brought by <u>either</u> party.

8

**United States District Court**
For the Northern District of California

C

For the following reasons, the court concludes that Real Mex need not show that the DRA is bilateral in effect as well as appearance.

First, as suggested above, inasmuch as Ingle contemplated that the presumption of substantive unconscionability applies when the agreement is neither explicitly nor implicitly non-mutual, that portion of the opinion is properly treated as *obiter dicta*.

Second and more important, application of the Ingle presumption in this case is inconsistent with the approach taken by California courts.  As mentioned above, the DRA satisfies the requirements of Armendariz.  And since Armendariz, the California Supreme Court has indicated that an agreement that is neither explicitly nor implicitly non-mutual is not fatally one-sided.  See Little v Auto Stiegler, Inc, 29 Cal 4th 1064 (2003).  "[U]nlike the agreement in Armendariz, which explicitly limited the scope of the arbitration agreement to wrongful termination claims and therefore implicitly excluded the employer's claims against the employee, the arbitration agreement in [Little]," similar to the DRA in this case, "contained no such limitation, instead applying to 'any claim, dispute or controversy * * * between the employee and the Company."  Id at 1075 n 1 (citation and alteration omitted).  For this reason, the trial court's conclusion that the agreement was unconscionable for lack of mutuality "[did] not appear to be valid."  Id.  Notably, the opinion in Little was filed over two months prior to, but was not cited by, Ingle.

Further, Ingle's presumption has been all but ignored by California courts.  See Nyulassy v Lockheed Martin Corp, 120 Cal

9

United States District Court

For the Northern District of California

App 4th 1267, 1278-88 (2004) (addressing enforceability of employment arbitration agreement without reference to Ingle); Fitz v NCR Corp, 118 Cal App 4th 702, 723-27 (2004) (same); Abramsom v Juniper Networks, Inc, 115 Cal App 4th 638, 655-58 (2004) (same); Martinez v. Master Protection Corp, 118 Cal App 4th 107, 114-119 (2004) (same).  Rather, California courts have uniformly declined to find arbitration agreements unconscionable for lack of mutuality when the agreement is neither explicitly nor implicitly non-mutual. See Jones v Humanscale Corporation, 130 Cal App 4th 401, 415 (2005); McManus v CIBC World Markets Corp, 109 Cal App 4th 76 (2003).  Indeed, the court is aware of only one (unpublished) instance in which a California court has looked to Ingle; the court limited Ingle to its facts and compelled arbitration because the agreement was mutual on its face.  See Huskey v Hollywood Entertainment Corp, 2006 WL 1793612, *11 (Cal Ct App).  See also, e g, Employers Ins of Wausau v Granite State Ins Co, 330 F3d 1214, 1220 n 8 (9th Cir 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value.").  Unsurprisingly, federal district courts in the Ninth Circuit have followed the lead of the state courts.  See Marshall v Pontiac, 287 F Supp 2d 1229, 1233 (CD Cal 2003) ("[T]he outcome is dictated by Little * * *.  Therefore, plaintiff's argument that the arbitration agreement is unconscionable for lack of mutuality must also be rejected.").  See also Jones v Deja Vu, Inc, 419 F Supp 2d 1146, 1149 (ND Cal 2005) (Zimmerman); Irwin v UBS Painewebber, Inc, 324 F Supp 2d 1103, 1109 (CD Cal 2004).

In sum, the court concludes that to the extent that the portion of Ingle upon which Miyasaki relies is not *dicta*,

10

United States District Court

For the Northern District of California

application of the <u>Ingle</u> presumption in this case would be
inconsistent with California law as interpreted by California
courts.  The DRA is neither explicitly nor implicitly unilateral.
Miyasaki's argument that the DRA is unconscionable for lack of
mutuality is accordingly rejected.


                                IV

          Putting aside the purported lack of mutuality, Miyasaki
argues that the DRA is unconscionable because the AAA employment
dispute rules incorporated by reference into the DRA limit
procedural remedies while shifting costs to employees.  Opp at 9-
10.


                                A

          Before turning to Miyasaki's arguments, the court notes
that it is not clear whether the issues presented are governed by
state or federal law.  On the one hand, California courts
contemplate that discovery limitations and cost-related
considerations are matters that are governed by generally
applicable state law.  See <u>Little</u>, 29 Cal 4th at 1079 ("The
<u>Armendariz</u> requirements are * * * applications of general state law
contract principles regarding the unwaivability of public rights to
the unique context of arbitration, and accordingly are not
preempted by the FAA.").  On the other hand, because Miyasaki's
underlying claim arises under federal law, her challenge to the
enforceability of the DRA would seem to be governed by the
principle that a federal claimant cannot be forced to arbitration
when that forum would frustrate the claimant's ability to vindicate

                                11

United States District Court

For the Northern District of California

her statutory rights.  See <u>Gilmer v Interstate/Johnson Lane Corp</u>, 500 US 20, 31 (1991) (concluding that discovery limitations in arbitration did not frustrate plaintiff's ability to vindicate his rights under the Age Discrimination in Employment Act); <u>Green Tree Financial Corp v Randolph</u>, 531 US 79, 90-91 (2000) (recognizing that an arbitration agreement might not be enforceable under the FAA when arbitration costs effectively prevent a claimant from vindicating federal statutory rights).  The court need not resolve the questions of choice of law or preemption that lurk behind Miyasaki's arguments.  See, e g, Robert S Safi, <u>Beyond Unconscionability:  Preserving the Class Mechanism Under State Law in the Era of Consumer Arbitration</u>, 83 Tex L Rev 1715, 1729 n 81 (2005) ("<u>Randolph</u> should not be read as creating a federal common law of unconscionability that supersedes, rather than merely supplements, state law * * *.  A validity challenge based on an unconscionable [provision] is conceptually distinct from a challenge based on the plaintiff's inability to vindicate statutory rights in the arbitral forum.  The former relates to the validity of the agreement itself, while the latter relates to the adequacy of the forum to hear the particular claim." (citation omitted)).  As explained further below, Miyasaki's arguments fail under both California and federal law.


                              B

     Miyasaki first draws a bead on Rule 7 of the AAA employment dispute rules, which provides:  "The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator

considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." Doc #13 (Pope Decl), Ex B (AAA Employment Dispute Rules) at 6.   In Miyasaki's view, this "is clearly an extreme limitation of the discovery that would available in a court proceeding."  Opp at 9.

1

In Ferguson v Countrywide Credit Industries, 298 F3d 778, 786 (9th Cir 2002), the arbitration agreement limited depositions of corporate representatives to no more than four designated subjects.  Applying California law, the Ferguson court held that, standing alone, the discovery provision was valid because the arbitrator is ultimately responsible to "balance the need for simplicity in arbitration with the discovery necessary."  Id (relying upon Mercuro v Superior Court, 96 Cal App 4th 167, 184 (2002)).  Although the court ultimately found the agreement as a whole to be unconscionable, the discovery provision simply buttressed the court's belief that the arbitration agreement "unduly favor[ed] Countrywide at every turn."  Id.

Unlike the provision in Ferguson, the DRA here places no limit on discovery except by incorporation of the AAA rules which provide discovery necessary "to a full and fair exploration of the issues in dispute." AAA Employment Dispute Rules at 7.  Moreover, the DRA is not permeated with other terms favoring Real Mex.  The court therefore declines to invalidate the DRA as unconscionable.

//

//

//

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

2

Miyasaki next argues that the discovery limitations will prevent her from vindicating her rights under Title VII.  Opp at 12-13.  In _Gilmer_, *supra*, the plaintiff similarly argued that arbitration would abrogate his rights under the Age Discrimination in Employment Act because, among other things, "the discovery allowed in arbitration is more limited than in the federal courts." _Gilmer_, 500 US at 31.  The Court rejected this argument, holding that by agreeing to arbitrate, a party "trades the procedures * * * of the courtroom for the simplicity, informality, and expedition of arbitration."  Id (citing _Mitsubishi Motors Corp v Soler Chrysler-Plymouth, Inc_, 473 US 614, 628 (1985)).

The AAA employment dispute rules give the arbitrator authority "to order such discovery * * * as the arbitrator considers necessary to a _full and fair exploration of the issue in dispute_, consistent with the expedited nature of arbitration."  AAA Employment Dispute Rules at 7 (emphasis added).  This limitation does not obviously deprive Miyasaki of her ability to develop her case in arbitration.  In any event, Miyasaki has not distinguished this case from _Gilmer_.

C

Miyasaki next takes aim at Rule 24 (which dispenses with the rules of evidence), Rule 25 (which provides that the arbitrator may consider the evidence of witnesses in the form of affidavits) and Rule 39 (which provides that witness expenses will be borne by the party producing the witness).  Miyasaki contends that these provisions "grossly favor[]" Real Mex and that their effect is to

14

deprive her of the benefit of live cross-examination as would be available in federal court unless she is willing to bear the expense of producing Real Mex employees as witnesses.  Opp at 10.

Although the arbitrator may consider evidence of witnesses by affidavit, the arbitrator "shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission."  AAA Employment Dispute Rules at 10.  By asking the court to find this provision "grossly" unfair, Miyasaki effectively asks the court to question the neutrality of the arbitrator.  The Supreme Court has refused to indulge the idea that the "arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators."  Mitsubishi, 473 US at 634.

Regarding arbitration costs, in Randolph, *supra*, the Court considered whether an arbitration agreement that was silent as to cost and fee allocation would leave plaintiff "unable to vindicate her statutory rights in arbitration."  Randolph, 531 US at 90.  Resting the burden of "showing the likelihood of incurring such costs" on the party opposing arbitration, the Court refused to invalidate the agreement because plaintiff failed to substantiate her claims that she would be "required to bear prohibitive arbitration costs if she pursues her claim in an arbitral forum."  Id at 90-91.

The DRA here requires Real Mex to "pay the arbitrator's fees" while "the employee will pay only an amount equal to court fees, if a civil action had been filed by or against an employee."  Employee Handbook at 3.  Nonetheless, Miyasaki suggests that the DRA would effectively "shift the expense of producing employer

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

witnesses from the employer to the employee." Opp at 10. Although the Court in Randolph did not reach "[h]ow detailed the showing of prohibitive expense must be," 531 US at 522, Miyasaki provides no evidence or non-conclusory argument to substantiate her claim.

Moreover, Miyasaki's claim of expense-shifting is tenuous because rather than compelling physical presence, Miyasaki could examine Real Mex witnesses in depositions. She would bear deposition-related expenses in federal court unless she prevailed the merits of her claim. So, too, in arbitration, for although Rule 39 of the AAA employment dispute rules requires each party to bear expenses incurred in producing witnesses, Rule 34(d) provides that the arbitrator may award "any remedy or relief that would have been available to the parties had the matter been heard in court" and assess expenses "in favor of any party."

In sum, the provisions Miyasaki challenges do not unduly favor Real Mex and Miyasaki has failed to demonstrate that arbitration-specific costs would preclude her from vindicating her rights under Title VII.

V

After the court notified the parties that the present motion was suitable for decision without oral argument, Doc #28, Miyasaki submitted an "offer of proof of argument that would have been presented at the hearing" had one been held, Doc #29. In this final attempt to avoid arbitration, Miyasaki argues that the DRA effectively and impermissibly shortens the statute of limitations on her Title VII claim. See Circuit City Stores, Inc v Adams, 279 F3d 889, 894-95 (9th Cir 2002) (suggesting that time limitations

16

United States District Court

For the Northern District of California

1  stricter than those provided for by statute may render an

2  arbitration agreement unenforceable).

3          The DRA reads:

4          If a dispute arises, you and the Company agree to
           try, in good faith, to resolve the dispute.  If the
5          dispute cannot be resolved informally within 30
           days, you and the Company agree to submit the
6          dispute to non-binding mediation before a mediator
           * * * within 30 days. * * *  If mediation does not
7          resolve the dispute, [or if no mediation is held
           within 60 days, or if the parties mutually agree to
8          waive the mediation] you and the Company agree that
           the dispute will be resolved by final and binding
9          arbitration."

10  DRA at 2.  See also id at n 2 (supplying bracketed information).

11  Apparently, Miyasaki suspects that because no mediation occurred in

12  this case, Real Mex will argue before the arbitrator that she

13  cannot proceed in arbitration.  Without deciding the question, the

14  court will comment that Miyasaki's interpretation is not the most

15  plausible reading of the above-quoted language.  At the very best,

16  the DRA is ambiguous in this respect.  In any event, "this matter

17  of contract interpretation should be for the arbitrator, not the

18  court[], to decide."  Green Tree Financial Corp v Bazzle, 539 US

19  444, 453 (2003).  Further, the court "should not, on the basis of

20  mere speculation that an arbitrator might interpret th[is]

21  ambiguous agreement[] in a manner that casts [its] enforceability

22  into doubt, take upon [itself] the authority to decide the

23  antecedent question of how the ambiguity is to be resolved."

24  Pacificare Health Systems, Inc v Book, 538 US 401, 406-07 (2003)

25  (quotation omitted).

26          As in Book, the proper course here is to compel

27  arbitration.  But to alleviate Miyasaki's concerns, despite that a

28  court may "order summary judgment when all claims are barred by an

17

arbitration clause," <u>Sparling v Hoffman Constr Co</u>, 864 F2d 635, 638 (9th Cir 1988), the court will simply stay proceedings.  If, <u>and only if</u>, the arbitrator interprets the DRA in a manner that time-bars Miyasaki's claims, the court will entertain a motion for reconsideration by Miyasaki, <u>provided that</u> such motion shall not attempt to re-litigate any other ruling in this order.

                              VI

        In sum, Real Mex's petition to compel arbitration is GRANTED.  This action is STAYED pending arbitration.  The parties are ORDERED to inform the court once this matter has been resolved.

        SO ORDERED.


        _____

        VAUGHN R WALKER

        United States District Chief Judge